RESERVE LIFE INSURANCE COMPANY,
Appellant,

v.

Julia MILLER, Appellee.

No. 10448.

Court of Civil Appeals of Texas.

Austin.

Feb. 6, 1957.

Rehearing Denied March 13, 1957.

Joe Bailey Humphreys, Dallas, for appellant.

Clyde Vinson, San Angelo, for appellee.

GRAY, Justice.

This suit was filed by appellee to recover death benefits under an insurance policy. The policy was issued to Q. V. Miller and, among other benefits, provided for the payment of $1,000 for loss of life resulting from accidental injury provided that death occurred within ninety days after such injury was sustained.

Q. V. Miller suffered accidental injury in an automobile collision in Austin on May 25, 1954. He remained in a hospital in Austin and under the care of Dr. Kelly until June 2, 1954, when he was removed to Ballinger, his home, and there remained under the care of Dr. Chandler until he died on August 17, 1954.

Appellee is the surviving wife of Q. V. Miller and is the beneficiary named in the insurance policy.

The cause of death of Q. V. Miller must be determined largely from the testimony of Drs. Kelly and Chandler there being no other medical evidence given at the trial. Lay witnesses testified at the trial and their testimony shows that: the automobile collision occurred on May 25; Miller was in-

jured and was taken to the hospital in Austin by ambulance. It also relates to his appearance after the accident and his physical condition prior thereto.

A jury trial was had and on the jury's verdict judgment was rendered for appellee for $1,000, penalty, attorney's fee and interest on the judgment.

Appellant here presents eight points. These are to the effect that the trial court erred in: (1) overruling its motion for instructed verdict; (2) overruling its motion for judgment non obstante veredicto; (3) overruling its motion for mistrial; (4) excluding its exhibit 2; (5) failing to strike the testimony of Dr. Chandler; (6) admitting objected to answers of Dr. Kelly, and (7) overruling its exceptions to the charge. Point (8) is that the judgment is erroneous as a matter of law.

We will dispose of the above points under the questions of law presented in appellant's brief.

Appellant urges its defense and says in its brief that the evidence does not show a causal connection between the accidental injury and real cause of death. Points 1, 2, 5 and 7 as briefed relate to this question.

There is no dispute as to the terms of the insurance policy, or that Q. V. Miller suffered accidental injury on May 25 and died within ninety days thereafter. The dispute is as to the sufficiency of the showing of the cause of death.

Dr. Kelly first saw Q. V. Miller in the emergency room of the hospital in Austin where he had been taken by an ambulance from the scene of the accident on May 25, 1954. An examination was made in the room and Dr. Kelly ordered x-rays made. He testified:

"A. My findings in the emergency room were cerebral concussion, amnesia, head contusions and lacerations and possible fracture of skull or spine. Final diagnosis: cerebral concussion, amnesia from the accident, laceration to forehead and tip of nose and contusion of head. The patient remained confused for periods of time up until I last saw him when he left the hospital."

Dr. Kelly further testified:

"A. Mr. Victor Miller was under my care while he was in Brackenridge Hospital from May 25 to June 2, 1954. I did not treat Mr. Miller after June 2, 1954.

"Q. What was the condition of Quincy Victor Miller the last time you saw him? A. He was still confused in his mind at times and was able to leave the hospital but still recuperating from his injuries.

"Q. Was there any causal connection, in your opinion, between the accidental automobile collision Quincy Victor Miller was involved in on May 25, 1954, just before you first saw him and his condition when you last saw him; if so, explain in as simple words as you can? A. Yes, Mr. Miller still showed evidence of brain damage due to the blow to his head incurred in the accident and he was still recuperating from his bodily injuries. He was permitted to leave because he was anxious to get home and would be there under the care of his family doctor."

Dr. Chandler testified that he saw Q. V. Miller when he was brought to Ballinger from Austin the first part of June, 1954, and that he treated him until his death.

On direct examination Dr. Chandler testified:

"Q. Assuming, Dr. Chandler, that the evidence shows that Q. Victor Miller was involved in an automobile accident in the city of Austin on May 25, 1954, that his car collided with another car driven by a Mr. Hoover, both cars were demolished, badly wrecked; Mr. Miller was thrown out of his car to the pavement and found immediately in an unconscious condition, was taken

to the Brackenridge Hospital in an ambulance; now, assuming those facts, and taking into consideration what you yourself observed from your examination of Mr. Miller after he came back here or was brought back here along the first part of June, 1954, and what you observed about him during the period from the time you first saw him after he was brought back up until his death, in your opinion was there any connection, casual connection between the accident and his death?

\* \* \* \* \* \*

"A. My answer is yes.

"Q. From your examination of Mr. Miller, your observance of Mr. Miller during the period that you attended him after his return to Ballinger the first part of June, 1954, until his death, what history did you get from Mr. Miller? A. Well, may I take the history that came from the doctors?

"Q. You treated him as an attending physician, did you not? A. That's right.

"Q. What history did you get? A. That he had been in a car accident, and was flung from his car on his head and shoulder, and that he had been unconscious and treated in the hospital in Austin by Dr. Kelly, and that he had been somewhat confused since that day. That answers your question up to now.

"Q. Now, from your own examination, from your own history of the accident and history of the patient, in your opinion what was the cause of his death? Witness: Cerebral hemorrhage as a result of concussion. That was what was on the death certificate.

\* \* \* \* \* \*

"Q. Now, is there such a thing as delayed effects from a concussion, death resulting from concussion? A. In a very high percentage of cases delayed results are the ones that are more fear-

ed than the others; we don't necessarily confine that entirely to concussion; maybe we had better say the delayed result of injury to the brain, the trauma to the brain.

"Q. Now, the symptons that you observed of Q. Victor Miller during his period, the first part of June until his death in August, state whether or not they were characteristic of the symptoms following concussion? A. Very definitely."

On cross examination Dr. Chandler testified that he got the history of Q. V. Miller's case from Dr. Kelly, from the family and from the patient himself. He also said that prior to 1954, Q. V. Miller was treated by him and that he had mild hypertension and did not have advanced arteriosclerosis. As to the cause of the death of Q. V. Miller on cross examination Dr. Chandler was asked and answered as follows:

"Q. In order to confirm your belief of a causal connection between the automobile collision in May of '54 and his death in August, August 17, 1954, what medical procedure would you have to employ? A. I think that would depend on your observance of the patient, entirely a sequence of events.

"Q. Assume you were going to confirm it, what procedure would you employ? A. If you wanted to employ an additional method to confirm such you could perform an autopsy and—well, would you care for me to tell you what you would find?

"Q. No, I want you to say what you would do; it would take an autopsy? A. I didn't say it would take that. I say it would be an additional means; you can't supersede the human mind. One thing isn't the whole show, but that is an additional method of confirmation. There are many physical signs and happenings in the history that will confirm your diagnosis, that is justifiable as far as diagnosis, but in

the making of diagnosis is an autopsy. An autopsy is done as an additional means of proving it, and there are some conditions that happen that kill individuals that an autopsy wouldn't show you as much as the knowledge of how the patient behaved during his illness. I wouldn't say that is true of hemorrhage, don't misunderstand me; I am merely saying that as an illustration.

"Q. Is it a fair statement to say then there is speculation as to causal connection between a cerebral hemorrhage occurring on August 17th following a single trauma as early as May of the same year? A. Would you state that exactly again, please? (Reporter's Note; Preceding question read)

"Witness: I would say that is a simple arriving at a conclusion as a result of the accident and not—

"Q. A conclusion? A. A simple conclusion as a result of all the facts at hand. That is the method any doctor uses in making a diagnosis.

"Q. That was your conclusion in this case? A. That was my conclusion in this instance."

Dr. Chandler signed the death certificate from which we quote:

"Cause of death

"1. Disease or condition directly leading to death, a. Cerebral Hemorrhage

"2. Other significant conditions, Cerebral concussion May 26, 1954. * * *

"I hereby certify that I attended the deceased from June 3, 1954, to August 17, 1954, that I last saw the deceased alive on 8–17–'54 and that death occurred at 10 P.M. from the causes and on the date stated above."

Appellant made a motion to strike the testimony of Dr. Chandler "for the reason that he testified on cross examination that the matter of cerebral concussion was a conclusion. Therefore, it is lacking in probative value and prejudices the rights of the defendant." The motion was overruled.

Point 6 supra is not briefed.

On cross examination Dr. Chandler was questioned as to the statements contained in the death certificate, gave his explanation thereof and adhered to his opinion as to the cause of the death of Miller. The death certificate recites that Miller died from "causes" stated.

Appellant says that the medical evidence does not meet the requirement that the evidence must show a reasonable probability that Q. V. Miller died as a result of the accidental injury sustained on May 25, 1954. See: Port Terminal R. Ass'n v. Ross, Tex., 289 S.W.2d 220, 228 and the authorities there cited.

■ The cause death was a question to be determined by the jury from the testimony of experts who had acquired scientific information on the subject sufficient to qualify them to express an opinion. This is true because in the case before us neither the court nor the jurors could properly form correct opinions of their own based upon the evidence as a whole and their own experience and knowledge of the subject. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943. Simmonds v. St. Louis B & M Ry. Co., 127 Tex. 23, 91 S.W.2d 332, 334. Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W.2d 332, 335.

■ Appellant does not say that Dr. Chandler was not qualified to state his opinion as to the cause of Q. V. Miller's death but says that he stated his conclusion rather than his opinion as to such cause. Dr. Chandler treated Q. V. Miller from June 3, 1954, until he died August 17 following. He said he got the history of the case from others and relied on that for the history

"not examination." He made his own diagnosis and gave his opinion as to the cause of death.

A complete examination of Dr. Chandler's testimony reflects that he was stating his opinion and we think it shows that on cross examination quoted supra he used the term "conclusion" in the meaning found in Webster's New International Dictionary, 2d Ed. "2. An inference; a reasoned judgment or an opinion of one; as, to form conclusions from experience."

■ Appellant says that because Dr. Chandler testified that Q. V. Miller was suffering from ailments other than the accidental injury his testimony does not meet the requirement supra. We think Dr. Chandler stated it to be his opinion that the accident was the cause of Miller's death; that it was sufficient to show a reasonable probability that the accident was the cause of death, that it was proper to submit the issue to the jury and that the jury's answer thereto is supported by evidence.

■ During the trial appellee called as a witness Mrs. Granville, a sister in law of Q. V. Miller. She testified that she had seen Miller once a month for five years prior to the accident; that she saw him driving a car; that he seemed normal; that she saw him May 25 prior to the accident, and that she saw him at the hospital after the accident and described his appearance. After she was excused and had left the witness stand but was still near to it Mrs. Granville said:

"* * * that she wanted to tell it just like she saw it, because she knew before the accident he was all right, * * *"

Appellant then moved for a mistrial and the motion was overruled. Appellant did not request that the statement be withdrawn from the jury or that the jury be instructed not to consider it. In this state of the record error is not presented. At most the statement by the witness was that she had told the truth and that she knew that Miller was normal before the accident. We think that the error could have been cured by an instruction to the jury not to consider the statement. Since no such instruction was requested or given the statement only presented a question of the credibility of the witness. Brotherhood of Locomotive Fireman and Enginemen v. Raney, Tex.Civ.App., 101 S.W.2d 863. Er. dism.

■ Appellant complains that the trial court erred in excluding its Exhibit 2 offered in evidence. This exhibit pertains to hospital expense provided for in the insurance policy. It was signed by Q. V. Miller on May 26, 1956, and contains the attending physician's report which was signed by Dr. Kelly on June 3, 1954. This report only was excluded and the portions of such report relevant here are:

"4. Describe in full the illness or injury with complete diagnosis. Cerebral concussion, amnesia for accident, laceration to forehead and tip of nose, contusion to bridge of nose.

" * * * * * *

"10. Has Patient any chronic or constitutional disease or physical defect? (Give details). Hyper-tension & arteriosclerotic heart disease, compatible with age."

Dr. Chandler testified that Q. V. Miller prior to the accident was suffering from hypertension and arteriosclerosis compatible with his age and that it was mild. The offered statement does not contradict the testimony given by Dr. Kelly and does not dispute the testimony of Dr. Chandler whose testimony as to the cause of death we have already discussed. There was no other testimony as to such cause unless by the death certificate quoted supra. The exhibit does not purport to state the cause of death. In view of the record reversible error is not presented by point 4.

Appellant says that the trial court erred in awarding appellee a recovery for penalty and attorney's fee because there is no evidence that a demand for payment under the policy was made and no evidence that the statutory waiting period before filing suit had lapsed all as is provided by Art. 3.62, Texas Insurance Code, V.A.T.S.

There is in the record a letter from C. B. Cooper, "Senior Claims Examiner" for appellant dated October 27, 1954. It is addressed to a firm of attorneys and identifies its subject as follows:

"Re: Mr. Q. V. Miller
701 E. 6th St.
Ballinger, Texas
Policy R–497–048
Benefit K–13284"

It then states in part:

"We have carefully reviewed the information in connection with the claim presented for the above named Policyholder and regret to advise you that we are unable to accept liability under the principle sum benefit in this policy.

"We feel quite sure that you are fully aware that Part Seven of this particular policy provides death benefit coverage only if the death is the result of an accidental injury. In this particular case, we find that death was due to a Cerebral Hemorrhage. This information was submitted on the official certificate and we are enclosing a photostatic copy for your records. May we respectfully refer you to (1) 'disease or condition directly leading to death' and (2) 'other significant conditions, conditions contributing to the death but not related to the disease or condition causing death.' We feel that the answer to these particular questions is self explanatory and therefore the condition causing death is not covered under this portion of the contract."

The letter written more than two months after the death of Q. V. Miller clearly acknowledges a "claim presented" and denies liability under the terms of the policy. Appellant treated the claim as a demand for payment under the policy and denied its liability and is not in position to say that no demand for payment was made. National Life & Accident Ins. Co. v. Dove, 141 Tex. 464, 174 S.W.2d 245.

The suit was filed May 11, 1955, and the statutory waiting period after demand for payment before filing suit had expired.

Under its point 8 appellant says the judgment is erroneous because it includes penalty, attorney's fee and interest. We have just said that appellant cannot say that demand for payment was not made; it denied liability and refused payment of the demand, and the suit was not filed until after the lapse of thirty days. Therefore penalty and attorney's fee were properly awarded. Art. 3.62 supra. The attorney's fee was taxed as costs, Art. 3.62 supra, and the balance of the judgment bears interest at the rate of 6 per cent per annum which is proper. Art. 5072, Vernon's Ann.Civ.St.

The judgment of the trial court is affirmed.

In appellant's motion for rehearing complaint is made among other things, that in our original opinion we did not dispose of its point 7. The substance of the point is stated in our opinion.

Point 7 as stated in appellant's brief refers to "Tr. 7." This reference is to appellant's objections and exceptions to the trial court's charge to the jury.

The cause was submitted to the jury on three special issues: (1) Did Miller sustain accidental bodily injuries on or about May 25, 1954? (2) Were such bodily injuries, if any, sustained by Miller the proximate cause of his death on August 17, 1954? and (3) What amount of money, if any, would be a reasonable fee for plaintiff's attorney?

Appellee alleged that Miller sustained accidental bodily injuries on May 25, 1954, and that his death was proximately caused by such accidental bodily injuries. Appellant answered by a general denial and alleged that Miller did not die from accidental bodily injury but died from disease.

In Appellant's objections and exceptions to the court's charge it complains that there is no admissible evidence to justify the submission of issue 1, and further complains of that issue because: it assumes the existence of a material disputed fact; it permits the jury to consider injuries which are not in conformity with plaintiff's pleadings, it does not limit the jury's consideration to accidental bodily injuries; it is a comment upon the weight of the evidence; there are two ultimate fact questions embodied in the one issue, and it fails to accurately convey plaintiff's contention as pleaded that the accidental bodily injuries sustained in the accident of May 25, 1954, were the proximate cause of Miller's death.

■ In our original opinion we discussed the evidence. Appellant has not briefed its other complaints to issue 1 and the same are waived.

Appellant objected to the charge because "It fails to include any definition of 'proximate cause.'" The charge as given did contain a definition of "proximate cause."

Complaint was made that the "charge as a whole omits the controlling issue" because it has no definition of causal connection between the accident of May 25, 1954 and the undisputed cause of death; and the charge does not inquire of a causal connection between the accidental injuries in May, 1954, "and cerebral hemorrhage, which is conclusively established by both sides as being the cause of death."

■ Issues 1 and 2 supra submitted the cause as it was alleged by appellee and appellant did not in writing request either a definition of "causal connection" or an issue submitting that question to the jury. In this respect appellant did not comply with the requirements of Rule 279, Texas Rules of Civil Procedure, and error is not presented.

Appellant also complained that the charge failed to limit the testimony of Dr. Chandler as to the history of the case as related to him and also the statements of Q. V. Miller contained in Exhibit 2. This exhibit was introduced in evidence by appellant.

Again Rule 279, supra is applicable because appellant did not request in writing any instruction limiting the evidence.

■ Objection was made to the submission of issue "2" because Art. 3.62, Insurance Code, was not complied with. Probably issue 3 was intended.

Attorneys' fees were sued for by appellee and it being shown by the evidence that Art. 3.62 supra was complied with (see original opinion) it was proper for the jury to determine from the evidence what amount was reasonable—not to exceed the amount prayed for.

Appellant's other points were disposed of by our original opinion and a further discussion of them is unnecessary. The motion for rehearing is overruled.