REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellant,

v.

Beverly B. BEARD, Appellee.

No. 14438.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 16, 1966.

Rehearing Overruled March 23, 1966.

2. The opinion in the present case was delivered before the Supreme Court's opinion, 400 S.W.2d 881, dated March 16, 1966.

McGown, McClanahan & Hamner, San Antonio, for appellant.

Lieck & Lieck, Goodstein & Semaan, San Antonio, for appellee.

BARROW, Justice.

Appellee, Beverly B. Beard, brought this suit as beneficiary to recover from appellant, Republic National Life Insurance Company, for accidental death benefits due under a group insurance policy issued by appellant to Star Engraving Company. The insured, Neal B. Beard, was an employee of Star Engraving Company and was issued a certificate of insurance under the group policy. After a non-jury trial, judgment was entered for appellee whereby she recovered the sum of $30,000, on the policy, together with the statutory penalty and attorneys' fees. Findings of fact and conclusions of law were made by the trial court, which will be set forth as applicable to the assignments of error.

Benefits were payable under the policy provisions, if insured sustained "an injury effected solely through external, violent and accidental means, and as a result thereof, directly and independently of all other causes suffered a loss of life within 90 days following the date of such injury." The policy also contained a limitation whereby benefits should not be payable for any loss to which a contributing cause is "disease,

bodily or mental infirmity, or medical and surgical treatment thereof * * *."

In Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110 (Tex. 1965), the Supreme Court recently considered the test for determining liability under an accidental death policy containing somewhat similar language. The Court adopted this test: "We conclude that by definition of the policy terms and by logic, the policy coverage was limited to accidental bodily injuries which must be the sole cause of death." Recovery was denied because the beneficiary failed to prove that the death was the result solely of Hudman's overexertion, as all of the evidence showed that pre-existing serious heart disease and overexertion *concurred* to cause the fibrillation of Hudman's heart and, in turn, his death. The Court pointed out, however, that "Recovery is not defeated when a pre-existing condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury."

Beard was involved in a serious automobile accident on September 16, 1963, whereby he sustained a severe concussion causing him to be confused, addled and disoriented; fractured ribs; an eye injury; laceration of his left kneecap; fracture of his right kneecap, which required an operation for removal of a part of the patella; as well as multiple bruises and contusions. He was hospitalized from that date until October 12, 1963. During this hospitalization he developed thrombo-phlebitis. The trial court found that about two weeks after the accident Beard developed a mental depression of great intensity, which was directly and proximately attributable to the injuries, the surgery and the accompanying mental and physical pain and anguish. As a result of this depression it was necessary for his physician, in proper treatment of same, to prescribe the drugs "librium" and "tofranil." Beard had an idiosyncracy, hypersensitivity, or an allergy to one of these drugs, more probably tofranil, and it caused

a toxicity of his liver which resulted in his death on November 7, 1963.

An autopsy was performed following Beard's death and, in addition to the drug intoxication, the liver was found to be damaged from early portal cirrhosis. The trial court found, however, that the condition of early portal cirrhosis was not a contributing cause of Beard's death, and did not contribute to the toxic condition. It was found that all of the injuries received in the automobile accident, together and combined, caused a chain of circumstances which resulted in a mental depression requiring the administration of the drugs aforesaid, which drugs resulted in toxicity and the consequent death.

Appellant urges that insured died of drugs administered for a condition of depression, which was a purely mental or emotional reaction to the accidental injuries, and therefore the injuries were, at most, the remote cause of insured's death, and such death did not result, directly and independently of all other causes, from the accidental injuries. Appellant asserts that the development of the psychotic depression was a new departure from the direct line of causation.

The evidence establishes that insured was a very active, robust person prior to the automobile accident and had never suffered from a mental depression or any other mental illness. His family doctor, Dr. Romo, testified that the injuries sustained by Beard, including the thrombo-phlebitis, were very painful, and that about two weeks after the accident Beard developed a psychotic depression as a result of his inactivity, suffering and pain. In his opinion this depression was a direct result of the accidental injuries sustained by Beard.

Dr. King, a psychiatrist, was called into the case by Dr. Romo on November 5, 1963. This was after Beard's second hospitalization on November 4, 1963, and at that time Beard was irrational and having hallucinations. Dr. King testified that the depression was a psychological outgrowth from the accident and was not an uncommon result. In his opinion, the depression was a psychic or emotional reaction to Beard's injuries, hospitalization and inactivity.

There is no dispute in the evidence that the antidepressant drugs "librium" and "tofranil" are customarily used by doctors for treatment of mental depression, and they are considered harmless when properly administered. There is sufficient evidence to support the trial court's findings that Beard had an idiosyncracy, hypersensitivity or allergy to one or both of these drugs and that this reaction produced a drug intoxication which prevented his liver from functioning properly.

We have not been cited to any case directly in point. Appellant concedes that coverage is afforded for death resulting from the proper treatment of accidental injuries, and this includes infections naturally resulting therefrom. See 29A American Jur., Insurance, § 1219; Appleman, Insurance Law, Vol. 1A, § 404; American National Ins. Co. v. Briggs, Tex.Civ.App., 90 S.W.2d 602, wr. dism.; International Travelers' Ass'n v. Bettis, Tex.Civ.App., 52 S.W.2d 1059, wr. ref.; State Farm Mutual Auto Ins. Co. v. Underwood, Mo.Ct. of App., 365 S.W.2d 761.

■ It is settled also that an idiosyncracy consisting of a hypersusceptibility to a harmless drug is not a "bodily infirmity" within a policy exclusion. Appleman, Insurance Law, § 401; 84 A.L.R.2d 180; Mutual Life Ins. Co. of New York v. Dodge, 4 Cir., 11 F.2d 486, 59 A.L.R. 1290; Johnson v. National Life & Accident Ins. Co., 92 Ga.App. 818, 90 S.E.2d 36.

■ The question is therefore narrowed to whether or not the mental depression suffered by Beard can be considered a direct result of the automobile collision and the injuries sustained, and therefore within the coverage afforded by this policy. The two doctors testified that it was such a result from the medical standpoint. It is our opinion that a mental or emotional reaction

which is produced solely by external, violent and accidental means, brought about by the concurrence of the elements of force and accident, or as a direct result of injuries so sustained, is within the coverage afforded by this type policy.

In Pan American Life Ins. Co. v. Andrews, 161 Tex. 391, 340 S.W.2d 787, 93 A. L.R.2d 560 (1960), the Supreme Court denied recovery under an accidental means policy for death resulting from thrombosis caused by psychic trauma insured had sustained while watching a fire in his office building. The policy required that there be visible evidence of injury on his body or internal injuries revealed by an autopsy, and there was neither shown in the case. The Court cited with approval 45 C.J.S. Insurance § 754, which states in part that a policy providing coverage for injury which results solely by or through "external, violent, and accidental means" applies only where the elements of force and accident concur in effecting the injury. Andrews was some distance from the building and these elements did not produce his injury. The majority of the Court denied recovery on the basis that there was no evidence that insured suffered death as a result of bodily injuries effected solely through external, violent and accidental means.

In Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315 (1955), and Houston Electric Co. v. Dorsett, 145 Tex. 95, 194 S.W.2d 546 (1946), the Supreme Court recognized that the body can be injured by nervous disorders as well as by actual physical injury. In Hood v. Texas Ind. Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948), the Supreme Court permitted recovery under the Workmen's Compensation Act for a neurosis where it was shown that same was the result of a physical injury sustained by claimant.

■ Under the uncontradicted evidence, Beard sustained serious injuries in the automobile accident. He had no prior mental condition. There was medical evidence that as a direct result of the pain, hospitalization and inactivity as a result of these injuries he developed a mental depression requiring medical treatment. This condition was sustained solely through external, violent and accidental means, within the terms of this policy.

■ Appellant complains, by "no evidence" and "insufficient evidence" points, of the findings by the trial court that the injuries sustained in the automobile collision resulted directly in the death of Beard, that these injuries, independently of all other causes resulted in his death, and that the early portal cirrhosis was not a contributing cause of death. These points, although determined by different tests, require a review of the entire record. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 18 Texas Law Review 361.

Six doctors testified in this case, four of whom were called by appellee and two by appellant. About twelve hours after Beard's death, appellee consented for an autopsy to be performed. This autopsy was performed under the supervision of Dr. VanAuken, and his report was the basis for the testimony of all the medical witnesses relative to the cause of death. This report showed the liver was damaged from two causes, pronounced cholangiolitis with cholestasis, due to drug intoxication, and lesions of an early portal cirrhosis.

Dr. Romo testified that in his opinion the autopsy finding of early portal cirrhosis was practically negligible, and this condition had nothing to do with the adverse effect that Beard had to the drugs. He testified that these drugs were commonly used in treatment of alcoholics with no ill effects, although alcoholics would usually have advanced portal cirrhosis. The liver was described as being a very large organ and one that is able to function properly although substantially damaged.

Appellee testified as to the apparent good health of Beard prior to the accident. Dr.

King testified that in his opinion the portal cirrhosis did not cause the drug reaction and didn't think it was of any major import in the death of Beard.

Dr. Albert Richmond, a pathologist, was called as a rebuttal witness by appellee. He testified that he had reviewed the autopsy report as well as the slides which were made of Beard's liver as a part of the autopsy. In his opinion the early portal cirrhosis was incidental and not a cause of death. In response to a hypothetical question, he testified that the cirrhosis did not have anything to do with Beard's death.

Dr. Cook, an internal medicine specialist, testified in rebuttal for appellee that the cause of death was drug intoxication caused by tofranil, and in his opinion the early portal cirrhosis did not contribute to Beard's death. He testified that the autopsy report described only a minimal type or portal cirrhosis.

■ This evidence, although contradicted sharply by medical witnesses called by appellant, is sufficient to raise fact issues under the "no evidence" test on the findings complained of by appellant.

Dr. VanAuken was called as a witness by appellant. He testified that the early portal cirrhosis existed prior to the accident. This is a progressive disease and although the condition had not progressed to where it was manifesting clinical symptoms that were noticeable by Beard or his family doctor, Dr. VanAuken testified that it was a contributing cause of the death of Beard. In his opinion, Beard's death was caused by the combination of the drug intoxication acting upon the previously damaged liver and both causes contributed to his death.

Dr. Creamer, another internal medicine specialist, was called as an expert witness by appellant. He testified, in response to a hypothetical question, that the early portal cirrhosis played a significant part in bringing about Beard's death. In his opinion

the drug intoxication and portal cirrhosis combined to produce the death of Beard.

■ It is our opinion, from an examination of the record as a whole, that the evidence is factually sufficient to support the trial court's findings and these findings are not so contrary to the evidence as to be manifestly unjust and therefore appellant's "insufficient evidence" points are overruled. Under these findings the injuries received in the automobile collision were the sole cause of Beard's death. They support a recovery under the test set forth in Mutual Benefit Health & Accident Ass'n v. Hudman, supra.

■ Appellant challenges, by "no evidence" and "insufficient evidence" points the trial court's finding that appellee made a demand for payment of her claim prior to May 5, 1964, so as to entitle her to recover the statutory penalty and attorney's fee under Art. 3.62, Insurance Code, Vernon's Ann.Civ.St. On March 24, 1964, appellee's attorney wrote appellant a letter of inquiry relative to this policy. After referring to supplemental information presented appellant on March 5, 1964, it said: "I have not heard whether you received this communication and hope that you have so that this claim can be processed as soon as possible."

Appellant treated this letter, together with a prior communication, as a claim for payment, in that its reply stated in part: "Thank you for your letter requesting our decision on the payment of the Accidental Death Benefit under the above policy." On May 5, 1964, by telegram and by letter, liability was denied for this claim. Suit was filed on June 17, 1964. Appellant did not at any time admit it owed this claim or offer to pay same.

It is our opinion these acts constituted sufficient demand for payment to justify penalty and attorney's fee. In National Life & Accident Ins. Co. v. Dove, 141 Tex. 464, 174 S.W.2d 245 (1943), very similar facts were considered sufficient as a demand under the penalty statute. The Court

said: "In order to meet the terms of the statute it is not indispensable that the demand be evidenced by firm and commanding language. It may be couched in the customarily-used polite language of the day. All that is required is the assertion of the right under the contract and a request for compliance therewith." In our case, as in *Dove*, the company recognized the claim as a demand for performance, but, after due investigation, denied the claim. See also Washington Nat. Ins. Co. v. Kohlenbrener, Tex.Civ.App., 329 S.W.2d 956, wr. ref. n. r. e.; Old National Ins. Co. v. Johnson, Tex.Civ.App., 312 S.W.2d 715, no wr. hist.; Reserve Life Ins. Co. v. Miller, Tex.Civ. App., 300 S.W.2d 343, wr. ref. n. r. e.

Appellant urges that in any event the attorneys' fees of $8,000 awarded to appellees' attorneys for legal services prior to entry of the judgment is grossly excessive. The judgment provides for additional attorneys' fees of $1,500 for appeal to this Court, and $1,500 in the event an application for writ of error is sought, but no complaint is made by appellant of these sums.

Appellee's attorney Mr. Lieck, Sr., testified that although he did not keep any systematic time records, he knew that his preparation for trial of this case took 160 hours, counting legal and medical research and conferences with witnesses. The case took two days actual trial before the court. Mr. Lieck testified that, considering the amount in controversy, a reasonable attorney's fee for services excluding appeal would be $12,000. Attorney A. R. Sohn testified as an expert witness that a reasonable attorney's fee would be from $10,000 to $15,000. He estimated the value of the actual time at about $5,000, and testified that the remainder of the fee was based on the amount in controversy and the skill necessary to try this type case.

Appellant offered no evidence contradicting the amount of attorneys' fees. It urges, however, that a substantial amount of the time involved related to a tort claim growing out of this accident and a claim under another life insurance policy. These matters were fully developed on cross-examination, as well as the very general manner of calculating the time spent on the case by appellee's attorneys.

■ The trial court found that on a time basis appellee's attorneys had earned $4,860 prior to trial and awarded the additional sum on the basis of the amount involved. We believe the amount involved is a legitimate consideration in determining a reasonable attorney's fee. The statute provides the court in fixing such fee shall consider all benefits to the insured incident to the prosecution of the suit. The trial court did not abuse its discretion in awarding appellee attorneys' fees of $8,000 under the record in this case.

Appellant complains of the awarding of statutory interest from date of judgment on the sum of $3,600 awarded as penalty interest, and the sum of $8,000 awarded as attorneys' fees under Art. 3.62, supra. This statute provides in part that where a company fails to pay the loss within thirty days after demand therefor, it shall be liable to pay, in addition to the amount of the loss, 12% damages on the amount of such loss. The statute provides, however, that such attorney's fee shall be taxed as a part of the costs in the case.

In American National Ins. Co. v. Mays, Tex.Civ.App., 97 S.W.2d 975, wr. ref., it was held that the item of attorney's fee, although referred to as costs in the statute was more properly an award of damages and should bear the statutory interest from date of judgment. Contra, Reserve Life Ins. Co. v. Miller, Tex.Civ.App., 300 S.W. 2d 343, wr. ref. n. r. e.

■ In our opinion the trial court properly awarded interest from date of judgment on the sum of $3,600, and on the $8,000 attorneys' fees incurred to date. The trial court properly provided that interest on the attorneys' fees provided for in the event of appeal would not begin to run until

the appeal was perfected or application for writ of error filed.

Reversible error is not shown by appellant's point complaining of improper coaching of Dr. King by appellee's counsel, through his objections during cross-examination. Although appellee unnecessarily restated her objections several times after the trial court had overruled same, the record does not show that appellant was prevented from a full and complete cross-examination of Dr. King. The trial court was in full control of the proceedings and in a position to consider the weight of the doctor's testimony, if any "coaching" was done by appellee. Further, the issue of whether Dr. King, as well as the other medical witnesses agreed with the conclusion of Dr. VanAuken as to the cause of death was fully developed before the trial court.

Under its last three points, appellant complains of the finding of the trial court that Beard earned in excess of $20,000 annually, so as to be entitled to $30,000 insurance under the group policy. It asserts both "no evidence" and "insufficient evidence" points, in addition to complaining of the entry of the judgment in this amount.

There is not a scintilla of evidence as to the earnings of Beard and the record clearly demonstrates that this issue was never joined by the parties. Appellee pleaded that Beard took out $30,000 life insurance under the group life policy and also indemnity for accidental death under the terms of said group policy and certificate. She further alleged that all premiums of said policy and certificate were duly paid. The pleadings clearly asserted demand for the amount of said policy, to-wit, $30,000. Appellant did not question this amount of coverage in any manner by its pleading.

At the beginning of the trial, appellee offered in evidence the life group policy and the accident and sickness group policy. Following this, she offered Beard's certificate in this manner:

Mr. Lieck: "And, Neal B. Beard's Certificate as Exhibit No. 3, showing the insurance, thirty thousand life and thirty thousand accident, under the accident provisions of the policy. They speak for themselves."

Mr. Hamner: "No objections."

The group life policy provides in part, that "A person shall be insured for the life insurance applicable to his classification in the schedule of earnings." There are set out five classifications for "Sales and Executives' Earnings," ranging from $20,000 and over, which authorized $30,000 life insurance, to earnings of $7,000 to $9,999, which authorized $10,000 life insurance. The group accident policy provided that rates are based upon a similar classification as set forth in the group life insurance policy, and provides for equivalent accidental death benefits. The policy terms provide that each individual insured should pay a premium based on the amount of his insurance.

The Certificate which was issued to Beard sets forth all five of the classifications. The only indication on the certificate as to Beard's classification is a circle drawn around the $30,000 figure by someone. The only other evidence relating to Beard's classification is in the letter of May 5, 1964, in which appellant denied liability. This letter states in part: "We regret that we are unable to be of assistance for this particular benefit, however, we were happy to allow the $30,000 life insurance benefit."

▇ It is our opinion that this admission, in view of the terms of the policy, constituted sufficient evidence to support the judgment establishing the principal sum due under the policy as $30,000.

The judgment of the trial court is affirmed.