**D.R., Appellant,**

v.

**J.A.R., Appellee.**

**No. 2–94–023–CV.**

Court of Appeals of Texas,
Fort Worth.

Feb. 28, 1995.

Rehearing Overruled March 30, 1995.

Graves, Dougherty, Hearon & Moody, and Robert J. Hearon, Jr., Selden Anne Wallace, Michael J. Whellan, Austin, for appellant.

McClure and McClure and Ann C. McClure, El Paso, Gary W. Nickelson, Fort Worth, for appellee.

Before LATTIMORE and DAY, JJ.

## OPINION ON REHEARING

DAY, Justice.

We grant appellant's motion for rehearing and hereby withdraw our opinion and judgment of December 7, 1994, and substitute the following.

Wife (D.R.) appeals a trial court judgment taxing attorney fees against her for filing a frivolous and harassing suit to modify a joint conservatorship. TEX.FAM.CODE ANN. § 14.082 (Vernon Supp.1995). We modify the trial court's judgment regarding post-judgment interest on appellate attorney fees. We affirm the judgment as modified.

## FACTS

The parties divorced on August 10, 1990. The divorce decree appointed both parties as joint managing conservators with Wife as the primary conservator of their two children. Additionally, the decree ordered supervised visitation for Husband (J.A.R.), child support payments of $1,050 per month, and unobserved urine tests of Husband when requested by Wife.

In December 1990, Wife filed a motion to modify the decree to reduce the Husband's visitation periods. She, however, nonsuited her motion.

In April 1991, Husband filed a motion to modify the decree seeking standard visitation pursuant to the visitation guidelines codified in the Texas Family Code. In response, Wife sought to be appointed sole managing conservator with a reduction in Husband's visitation rights. The trial court entered a modification order in February 1992 allowing Husband standard visitation, but the court retained the joint managing conservatorship and the provision for substance testing.

Afterwards, Wife's psychologist noted that she was in a state of shock. In fact, the notes and testimony of her psychologist state among other things:

1. Wife had great difficulty in dealing with the separation from her children;

2. Wife felt angry when the children went for their first overnight visit with Husband;

3. Wife experienced acute grief as a reaction to the court's decision granting Husband standard visitation;

4. Wife saw psychologist approximately twice per week following the court's ruling in order to deal with these issues;

5. On March 24, 1992, Wife met with another attorney who told her that she had very limited options;

6. On April 21, 1992, Wife met with two different attorneys regarding Husband's visitation rights between then and the end of summer;

7. The notes of May 12, 1992 reflect Wife was in tremendous fear about Husband's motives and behavior regarding her and the children and she expressed no confidence in the legal system;

8. The notes of May 14, 1992 reflect that her attorneys were recommending that she provide a summary regarding the children's treatment, and that she was afraid of losing more control over her children;

9. The notes of May 18, 1992 reflect Wife was very angry and upset about the summer visitation Husband planned with the children in Maine;

10. By May 29, 1992, Wife had retained new counsel.

Meanwhile, Wife testified she noticed changes in her children's behavior and willingness to visit their father, including deteriorations in the girl's school performance and sociability. She consulted her psychologist about the children's relationship with their father and the possibility of Husband lacking the sensitivity and knowledge necessary to raise a girl. Her psychologist recommended the children see a specialist for suspected or known sexual abuse. In June 1992, the children began seeing Dr. Baker.

From June 23 until July 8, 1992, Husband and the two children went to Maine on a vacation. Several days before the children were scheduled to return to Fort Worth, Wife traveled to Jackman, Maine to exercise her visitation rights. She picked the children up around 6:00 p.m. on July 3 and drove to Boston that night, arriving late and after the children were asleep. On July 5, they made the return trip from Boston to Jackman, Maine. Husband and the children returned to Fort Worth on July 8, 1992.

On July 31, 1992, several days before Husband's second extended summer visitation period, Wife, alleging sexual abuse by Husband, filed a motion to modify the visitation, an application for a temporary restraining order, and a request for a temporary injunction. The trial court granted the temporary order outlining a supervised visitation schedule for Husband on September 16, 1992.

In October 1992, Wife ceased her therapy sessions with her psychologist because her counsel felt that ongoing therapy would defeat the presentation of Wife as reliable. Wife, however, in November of 1992 substituted her then counsel with present counsel. As the January trial date approached, Wife filed numerous motions including: (1) a motion to bifurcate the trial; (2) a renewed motion for drug testing; (3) a motion to suspend visitation; and (4) a motion for psychological examination. The trial was continued until April.

On April 21, 1993, Wife filed a motion to terminate the parent-child relationship between Husband and the children. Husband responded by filing a motion seeking, among other things, appointment as sole managing conservator or alternatively, appointment as the primary joint managing conservator.

The trial began on May 24, 1993, but was halted on June 4, 1993 after Dr. Baker, one of Wife's expert witnesses, testified that one inappropriate event might have occurred in the past between Husband and the children, but he could not determine a pattern or suggest that any sexual abuse ever occurred. Furthermore, he testified that the one possible event between Husband and the children was not the ongoing problem for the children. After this testimony and the testimony of other experts, Wife abandoned her modification claim and both parties reached a settlement on all issues except for court costs, expert fees, and attorney fees. On July 19, 1993, the trial court signed an agreed order proposed by the parties, and an order taxing Wife with attorney fees. After numerous motions by Wife, the trial court entered an amended judgment that included a provision that Wife pay all costs including Husband's attorney fees. The trial court taxed Wife with $146,000 in attorney fees that included an unconditional award of $85,000 in appellate attorney fees with a credit of $60,000 and $25,000 if Wife did not appeal to the court of appeals and Texas Supreme Court respectively. Furthermore, the trial court rendered findings of fact and conclusions of law which stated among other things that the motion to modify was frivolous and filed merely to harass Husband, and the motion to terminate lacked any basis in fact or law and was filed for the purpose of harassment and leverage. Wife appeals the trial court's judgment taxing attorney fees against her.

## STANDARD OF REVIEW FOR AWARD OF ATTORNEY FEES

In points of error one and two, Wife challenges the trial court's taxing of attorney fees against her because: (1) no evidence or insufficient evidence exists to support such an award, and (2) the trial court abused its discretion by granting the award. The trial court awarded attorney fees under section 14.082 of the Texas Family Code. Section 14.082 states, "If the court finds that a motion to modify under Section 14.081 [1] of this code is filed frivolously *OR* is designed to harass a party, the court shall tax attorney's fees as costs against the offending party as provided by Section 11.18 of this code." TEX. FAM.CODE ANN. § 14.082 (Vernon Supp.1995) (emphasis added).

---

1. TEX.FAM.CODE ANN. § 14.081 (Vernon Supp.1995) states the rules for modifying a joint conservatorship.

Before we can examine the appropriateness of the trial judge's award of attorney fees, however, we must first determine whether the word "shall" in section 14.082 makes the statute mandatory or directory.

There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory. The fundamental rule is to ascertain and give effect to the legislative intent. Although the word "shall" is generally construed to be mandatory, it may be and frequently is held to be merely directory. In determining whether the Legislature intended the particular provision to be mandatory or merely directory, consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction.

*Conners v. Conners,* 796 S.W.2d 233, 239 (Tex.App.—Fort Worth 1990, writ denied) (citing *Chisholm v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943, 945 (1956)). *See also* Tex.Gov't Code Ann. § 312.002 (Vernon 1988). Based on the entire act, its nature and object, we hold the word "shall" in section 14.082 merely directs the trial court to award the attorney fees as costs under section 11.18.[2] It, however, does not make the awarding of attorney fees mandatory. Therefore, we hold the proper standard of appellate review for section 14.082 is an abuse of discretion standard because the word "shall" in section 14.082 is directory. *See Warchol v. Warchol,* 853 S.W.2d 165, 169 (Tex.App.—Beaumont 1993, no writ) (The proper standard of review for section 14.082 is an abuse of discretion standard).

## ABUSE OF DISCRETION

Under an abuse of discretion standard, legal and factual insufficiency *are not independent grounds of error,* but are rather relevant factors in assessing whether the trial court abused its discretion. *See In The Interest of Pecht,* 874 S.W.2d 797, 800 (Tex.

App.—Texarkana 1994, no writ); *Mai v. Mai,* 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ). Because Wife argues legal and factual insufficiency as a ground for reversal of the trial court's discretionary award of attorney fees in point of error one, we overrule point of error one.

Wife, however, does argue abuse of discretion in point of error two. In determining whether a trial court abused its discretion, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland,* 862 S.W.2d 762, 776 (Tex.App.—Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Here, the trial court found, "At all time[s] relevant to this case, the termination action brought by [Wife] had no merit or basis in fact or in law and was filed late in the proceedings for purposes of harassment and leverage," and "The motion to modify filed by [Wife] was frivolous and designed to harass [Husband] as provided in the Family Code § 14.082."[3] After reviewing the entire record, we find that ample evidence exists to support the trial judge's award of attorney

---

2. Tex.Fam.Code Ann. § 11.18 (Vernon 1986). We review an award of attorney fees under section 11.18 using an abuse of discretion test. *Tropoli v. Markantonis,* 740 S.W.2d 563, 565 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Wolters v. White,* 659 S.W.2d 885 (Tex.App.—San Antonio 1983, writ dism'd).

3. Only a finding of frivolous or a finding of harassment is necessary to award attorney fees under section 14.082, but here the trial court found both.

fees under section 14.082. Therefore, we hold the trial judge did not abuse his discretion in awarding attorney fees because he neither acted arbitrarily nor unreasonably. We overrule Wife's point of error two.

## UNCONDITIONAL APPELLATE ATTORNEY FEES

■ In point of error three, Wife claims the trial court illegally and without authority awarded unconditional appellate attorney fees bearing interest from the date the trial court signed the order. Wife cites several cases stating the general proposition that an award of appellate attorney fees must be conditioned upon the taking of an unsuccessful appeal; thus, a successful party on appeal should not be forced to pay the unsuccessful party's attorney fees. *See Haynes & Boone v. Bowser Bouldin, Ltd.,* 864 S.W.2d 662, 677 (Tex.App.—San Antonio 1993, writ granted); *Southwestern Bell Tel. Co. v. Vollmer,* 805 S.W.2d 825, 834 (Tex.App.—Corpus Christi 1991, writ denied); *Rittgers v. Rittgers,* 802 S.W.2d 109, 115 (Tex.App.—Corpus Christi 1990, writ denied); *Smith v. Smith,* 757 S.W.2d 422, 426 (Tex.App.—Dallas 1988, writ denied); *Siegler v. Williams,* 658 S.W.2d 236, 241 (Tex.App.—Houston [1st Dist.] 1983, no writ). None of these cases, however, address appellate attorney fees under section 11.18 or section 14.082 of the Family Code. In fact, we are unable to find that any appellate court has determined whether a trial court can award unconditional attorney fees under section 14.082 of the Family Code. Because section 14.082 allows a trial court to award attorney fees under section 11.18 of the Family Code whenever a party either files a frivolous or harassing motion to modify a joint conservatorship under section 14.081 of the Family Code, an examination of cases interpreting the awarding of attorney fees under section 11.18 provides the best guidance for us.

Section 11.18(a) states:

In any proceeding under this subtitle, including, but not limited to, habeas corpus, enforcement, and contempt proceedings, the court may award costs. Reasonable attorney's fees may be taxed as costs, and may be ordered paid directly to the attor-ney, who may enforce the order for fees in his own name.

TEX.FAM.CODE ANN. § 11.18(a) (Vernon 1986). Cases construing section 11.18 hold that attorney fees may be awarded as costs even against the successful party based on the best interest of the children. *See Marichal v. Marichal,* 832 S.W.2d 797, 798–99 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Goheen v. Koester,* 794 S.W.2d 830, 835–36 (Tex.App.—Dallas 1990, writ denied); *Billeaud v. Billeaud,* 697 S.W.2d 652, 655 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Drexel v. McCutcheon,* 604 S.W.2d 430, 435 (Tex.Civ.App.—Waco 1980, no writ). Furthermore, several Texas courts have held that an unconditional award of appellate attorney fees under section 11.18, regardless of whether an appeal is successful, is not error. *Von Behren v. Von Behren,* 800 S.W.2d 919, 924 (Tex.App.—San Antonio 1990, writ denied); *Abrams v. Abrams,* 713 S.W.2d 195, 197–98 (Tex.App.—Corpus Christi 1986, no writ). After reviewing these cases, we hold that a trial court can grant an unconditional award of appellate attorney fees under section 14.082 of the Texas Family Code if the trial court bases that award on the best interest of the children.

■ Here, the trial court made the following findings:

40. [Husband] does not have the ability to pay the attorney fees he has incurred in this case.

41. [Wife] has the ability to pay the attorney fees of [Husband] for the trial and appeal of this case.

42. To strap [Husband] with all the expenses of this litigation will prevent him from being able to financially provide the kind of environment for the children that they should have and will, in all likelihood, contribute to a straining of the relationship between the children and [Husband].

. . . .

53. It is in the best interest of the children that [Wife] pay all fees and expenses ordered in the judgment.

Wife fails to challenge any of these findings, thus these findings are binding on us so long as more than a scintilla of evidence exists to

support the trial court's findings. *See Atascosa County Appraisal Dist. v. Tymrak*, 815 S.W.2d 364, 367 (Tex.App.—San Antonio 1991), *aff'd*, 858 S.W.2d 335 (Tex.1993) (citing *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex. Civ.App.—Beaumont 1980, writ ref'd n.r.e.) and *Zelios v. City of Dallas*, 568 S.W.2d 173, 175 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.)). After examining the entire record, we find ample evidence to support the trial court's determination that it would be in the best interest of the children that Wife pay the attorney fees. Therefore, the trial court did not err in taxing Wife with unconditional appellate attorney fees based on section 14.082 of the Family Code because it was in the children's best interest for Wife to pay attorney fees regardless of any outcome on appeal.

## INTEREST ON UNCONDITIONAL APPELLATE ATTORNEY FEES

■ Because the trial court properly awarded unconditional appellate attorney fees, we must now determine when post-judgment interest began to run on those fees. One court construing appellate attorney fees held that interest cannot begin to accrue on the award of appellate attorney fees until the appeals court renders judgment on the case because an award of appellate attorney fees is conditional on the unsuccessful outcome of the appeal. Thus, the award is not a final award until after the appeal. *See Protechnics Intern. v. Tru–Tag Systems*, 843 S.W.2d 734, 736 (Tex.App.— Houston [14th Dist.] 1992, no writ). Our holding above, however, provides that a trial court can unconditionally award appellate attorney fees under section 14.082 of the Family Code if the court finds it is in the best interest of the children. Therefore, the trial court's award of unconditional appellate attorney fees would be a final award.

Other Texas courts hold that post-judgment interest on appellate attorney fees begin to accrue when an appeal is either perfected or application for writ of error is filed. *Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex.App.—Corpus Christi 1991, writ denied); *Republic Nat'l Life Ins. Co. v. Beard*, 400 S.W.2d 853, 859–60 (Tex.

Civ.App.—San Antonio 1966, writ ref'd n.r.e.). While neither of these cases address interest on appellate attorney fees under either section 11.18 or section 14.082 of the Texas Family Code, we agree with their holding for unconditional appellate attorney fees. Otherwise, a party who decides not to appeal will pay interest on unconditional appellate attorney fees it never actually owed because it did not appeal. Thus, we hold that post-judgment interest on unconditional appellate attorney fees granted under section 14.082 of the Family Code should not begin to accrue at the date the trial court enters its judgment, but instead begins to accrue on the court of appeals attorney fees when the party perfects its appeal to a Texas court of appeals, and begins to accrue on the supreme court attorney fees when the party files an application for writ of error to the Texas Supreme Court.

Here, the trial court awarded post-judgment interest on the unconditional appellate attorney fees from the date it issued the order. Thus, the trial court erred. This error, however, can be corrected by modifying the trial court's judgment. We overrule point of error three, but modify the trial court's judgment to hold the interest on the court of appeals attorney fees began to accrue when Wife perfected her appeal to the Second District Court of Appeals, and interest will begin to accrue on the supreme court attorney fees when Wife files an application for writ of error to the Supreme Court of Texas.

## LEGAL AND FACTUAL SUFFICIENCY

■ Finally, in point of error four, Wife asserts that no evidence, or alternatively, insufficient evidence, exists to support an award of $60,000 and $25,000 in appellate attorney fees for the court of appeals and Texas Supreme Court respectively. In determining a "no evidence" point, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992); *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d

660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993).

We may only sustain a "no evidence" point of error when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex. 1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960). Some evidence exists when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco*, 824 S.W.2d at 556.

Alternatively, an assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We consider all the evidence in the case in making this determination and, if reversing, detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

Here, the record clearly supports the trial court's award of $85,000 in appellate attorney fees. Husband's attorney, testified as follows on the issue of attorney fees:

[ATTORNEY]: I believe there is a potential for this case to be appealed on this attorneys' fee issue alone. I am very fearful if it gets appealed on the attorneys' fee issue, that we will try to bring in, as we have evidenced here today in the courtroom, the other issues in the lawsuit. And I believe that if an appeal is taken in this case to the Court of Appeals, Second Court of Appeals in Tarrant County, that in order to prepare the appellate brief, an appellee's brief, that to brief the case and cover the many points that I believe would be raised and to argue the case, you're probably looking at $60,000 in appellate fees that would be incurred both by myself, who has handled family law appeals, and by other people that work with me who handle my appellate work when I have some. I also think that would be a reasonable and necessary fee in Tarrant County to be charged to handle the appellee's side of this case if appealed.

I believe the reasonable amount of attorneys' fees if a writ of error is taken to the Supreme Court of Texas would be $25,000 based on the fees that I normally charge to do writ of error work for the Supreme Court of the State of Texas. And I think that the hours put in there would be approximately 100 hours to equal that. I think that's a reasonable amount of money—time and money to be extended.

On cross-examination, Wife's attorney attempted to challenge the fees quoted by Husband's attorney with the following questions:

Q. Now, what is your opinion of what the attorneys' fees would be if this case were appealed only on the issue of attorneys' fees? It wouldn't be any $60,000, would it?

A. I am not sure that it wouldn't run that amount on the issue of attorneys' fees. Because based on my experience—and I am assuming now, I don't know whether you would handle such an appeal or not. But [Wife] hires topnotch lawyers, it's been my experience.

Q. Are you excluding me from that group of lawyers?

A. No, ma'am, not at all. If you handle it, I think you'd spend every bit of $60,000. I would assume that you would file a brief that would cover every single point of attorneys' fee law known to the State of Texas and other jurisdictions if they would support your theory, whatever that might be. I believe we would spend every dime of that.

Q. So you're saying that if the case were appealed in total, it was going to

cost—bringing in the other issues that it would cost $60,000. If it's appealed just on the issue of attorneys' fees, it's going to cost $60,000?

A. For all services necessary, yes, ma'am, I do.

Q. You don't see that it should be less if it were appealed just on attorneys' fees?

A. I think that's the only issue we have to appeal on. That's what my testimony is about.

Just as Husband's attorney predicted, the scope of this appeal only involves attorney fees, but Wife brought forward in this appeal all of the issues embroiled in the lawsuit below. Additionally, Husband's attorney appropriately predicted that a thorough review of the evidence would be required even if Wife only appealed on the issue of attorney fees.[4] Based on the testimony of Husband's attorney, the issues involved in the case, and the parties' behavior, sufficient evidence existed to support the trial court's award of $85,000 in appellate attorney fees. We overrule point of error four.

## CONCLUSION

In summary, we affirm all the trial court's judgment except for the interest on appellate attorney fees. We modify that portion of the trial court's judgment to provide that interest on the court of appeals attorney fees began to accrue when Wife perfected her appeal to the Second District Court of Appeals, and interest will begin to accrue on the supreme court attorney fees when Wife files an application for writ of error to the Supreme Court of Texas.

We affirm as modified.

---

4. The record of the case consists of nearly 1200 pages of testimony and 900 pages of transcript.