F. Michael SCHULTZ, Appellant,

v.

The CADLE COMPANY, Appellee.

No. 05–90–01473–CV.

Court of Appeals of Texas,
Dallas.

Jan. 16, 1992.
Rehearing Denied March 4, 1992.

David Evans, Anthony J. Interrante, Dallas, for appellant.

Randall K. Lindley, Michael L. Jones, Dallas, for appellee.

Before ENOCH, C.J., and STEPHENS [1] and BISSETT [2], JJ.

## OPINION

BISSETT, Justice (Retired).

F. Michael Schultz ("Schultz"), defendant in the trial court, appeals from a "turnover order" requiring him to turn over to Eddie

[1] The Honorable Bill J. Stephens, Retired, sitting by assignment.

[2] The Honorable Gerald T. Bissett, Retired, sitting by assignment.

Vassallo, as receiver for the Cadle Company ("Cadle"), certain income in accordance with the "turnover" statute. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986).

Schultz presents two points of error. He contends in his first point that the turnover order should be vacated because under the newly amended turnover statute, current wages are exempt from turnover orders. Schultz further contends in his second point that the turnover order should be vacated because Cadle failed to adequately plead or prove the requirements for receivership and that the trial court omitted the statutorily required bond for the receiver, Vassallo. We modify the trial court's order and, as modified, affirm.

In 1986, Sunbelt National Bank filed suit against Douglas L. Miller and Schultz to collect sums due on a promissory note. Schultz, as co-maker with Miller, guaranteed all sums due on the note. On October 14, 1986, the trial court entered an Order for Interlocutory Default Judgment against Schultz for $43,725.08, plus post-judgment interest and court costs.

On May 9, 1989, Cadle purchased the note and judgment from the Federal Deposit Insurance Corporation, receiver for Sunbelt National Bank. Cadle was then substituted into the lawsuit as plaintiff.

On November 6, 1989, the trial court's order for interlocutory default judgment became a final, valid, and subsisting judgment against Schultz after Cadle nonsuited Miller. The judgment decreed:

[P]laintiff Sunbelt National Bank shall have and recover Interlocutory Default Judgment in the sum of Forty–One Thousand Seven Hundred and Twenty–Five Dollars and Eight Cents ($41,725.08) as the principal debt, plus accrued interest under the promissory notes executed by said Defendant in favor of Plaintiff Sunbelt National Bank through date of final judgment herein, plus reasonable attorneys' fees for the filing and prosecution of this suit, which the Court finds to be $2,000.00 through entry of this Order, aggregating to the sum of $43,725.08 plus interest on said aggregate amount at the rate of ten percent (10%) per annum from date of judgment until paid, plus all costs of court incurred.

Thereafter, Cadle instituted several post-judgment collection proceedings against Schultz, who refused to pay the judgment. The trial court, pursuant to Cadle's Amended Application for Orders for Collection of Judgment by Court Proceedings, signed an order on October 5, 1990, wherein the court stated:

[T]he Court, having reviewed the Application, the pleadings on file in this cause and the judgment entered in favor of Cadle against Defendant Schultz on October 14, 1986 in the amount of $41,-725.08, plus post-judgment interest, attorney's fees, and court costs and is of the opinion that the Motion should be granted. . . .

The court decreed:

1. Schultz and his agent, shall deliver all of the following described property ("Property") to *EDDIE VASSALLO* as receiver, at *5710 Rawling # 1200, Dallas, Texas 75219* and that such receiver shall collect the Property and distribute *50%* of it to Cadle and the remainder shall be returned to Schultz after deducting reasonable and necessary receiver's fees and expenses. The Property consists of:

the income Schultz constructively possesses and/or actually possesses or receives, including, but not limited to any and all negotiable instruments, paychecks, cash or other funds received and/or constructively received by Schultz as income from the Central Texas Women's Clinic, P.A.;

2. The Property shall be delivered as described above in United States currency or other fully negotiable form;

3. The foregoing acts by the receiver shall continue until such time as Cadle has received the following amounts:
a) $41,725.08 representing the principal amount of the Judgment;
b) $493.00 representing costs of court; and
c) Post-judgment interest at 10% from the date of the judgment.

## FACTS

At some indefinite time after the interlocutory judgment was rendered, but before the turnover order (now on appeal) was signed, Schultz made a series of asset transfers. He executed two contracts of sale covering certain real property he owned, established two family trusts, partitioned community property, and formed a limited partnership under the name of "Szulc, Lt'd" into which he transferred numerous personal assets, including several Arabian horses. He also owned a fifty percent interest in the Central Texas Women's Clinic, a Professional Association ("the Clinic"), from which he received a salary of $23,000 per month. In early 1989, Schultz directed the Clinic to deposit his monthly salary into the Szulc Lt'd checking account. The Clinic deposited $11,500 every two weeks into the Szulc, Lt'd account, and Schultz and his wife wrote checks on the account.

Since the trial court did not make or file any findings of fact, all questions of fact are presumed found in support of the turnover order. *See In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916, 918 (Tex.1978). Therefore, the trial court's turnover order must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d at 717.

### THE FIRST POINT OF ERROR

■ The sole question presented by the first point is whether the property sought to be turned over to the receiver was "current wages" as claimed by Schultz, or "non-exempt income" as contended by Cadle.

The "turnover" statute is a procedural statute by which judgment creditors may reach assets of a judgment debtor through court proceedings. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986). These proceedings allow the appointment of a receiver who has the authority to take possession of nonexempt property, to sell it, and to pay the proceeds from the sale to the judgment creditor to the extent necessary to satisfy the judgment. Effective June 15, 1989, the legislature added the following section to the statute:

(f) A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute, including Section 42.0021, Property Code. This subsection does not apply to the enforcement of a child support obligation or a judgment for past due child support.

TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1991). The new section was intended to specifically exempt "current wages" (and other exempt property) from the operation of the turnover statute. *See* TEX.PROP.CODE ANN. § 42.002(8) (Vernon 1984); *Caulley v. Caulley*, 806 S.W.2d 795, 797–98 (Tex.1991).

The explicit language of the turnover order requires the turnover of "income" Schultz receives, *not* "current wages." While the turnover order is inclusive of funds he receives from the Clinic, it is not restricted or limited to this source of income. This would include interest income from any source. In the instant proceeding, the evidence considered by the trial court focused on Schultz's income from Szulc, Lt'd. A review of the evidence adduced at the hearing on the application for turnover reveals that the property ordered to be turned over was nonexempt *income* from a limited partnership, not current wages. As a result of the voluntary transfer of Schultz's salary to Szulc, Lt'd, the salary simply became another asset owned by Szulc, Lt'd—the transfer caused the salary to lose its character as "current wages."

In *Sutherland v. Young*, the court explained how current wages can lose their exempt status:

We have reached the conclusion that, when wages are paid to and received by the wage-earner, they thereby cease to be current wages, and the exemption statute does not apply thereto. Appellant, having taken his wages and *voluntarily placed them in the bank, and*

*thereby created the relation of debtor and creditor between himself and the bank,* caused the funds to be subject to garnishment, the same as if he had invested the same in property that was not exempt to him under the statutes. *Sutherland v. Young,* 292 S.W. 581, 583 (Tex.Civ.App.—Waco 1927, no writ) (emphasis added). Just as the wage-earner in *Sutherland* placed his wages to the bank and created the relationship of debtor and creditor, Schultz placed his wages to the Szulc, Lt'd account and, with respect to those wages, created the relationship of partner and partnership. Schultz's wages thereby lost their exempt status.

Schultz, as a shareholder and owner of the Clinic, had sufficient control over his wages to direct them to be transferred to Szulc, Lt'd. Consequently, once Schultz, a judgment debtor, directed that his wages be transferred to Szulc, Lt'd, they became "income" and lost their status as current wages.

The trial court stated at the rehearing of Cadle's application for turnover:

[I]n my opinion, once those wages are received, then they are no longer current wages and they lose their status. And particularly in this case, we've got it transferred. Once it's transferred, I believe that they are no longer current wages and are subject to turnover, and I'm going to grant the turnover.

"Wages" are compensation given to a hired person for his or her services. BLACK'S LAW DICTIONARY 1416 (5th ed. 1979). Schultz was not performing services for Szulc, Lt'd, which was purportedly established for estate and tax planning purposes.

The trial court ordered the turnover of income received by Schultz, *including but not limited to,* funds received by him as income from the Clinic. The order is broad enough to include the income received by Schultz from Szulc, Lt'd. The first point of error is overruled.[3]

3. We note the recent decision of *Caulley v. Caulley,* wherein the Supreme Court held that the proceeds of exempt property under any statute are also exempt. *Caulley v. Caulley,* 806 S.W.2d

## THE SECOND POINT OF ERROR

■ Schultz argues that the trial court erred in appointing a receiver to effect the turnover order because Cadle failed to comply with the statutes and rules of procedure applicable to receivership and that the trial court failed to require and settle the amount of the receiver's bond. To the contrary, Cadle and the trial court complied with the requirements of the turnover statute concerning the appointment of the receiver.

The Texas Legislature has specifically authorized the use of a receiver to assist Texas courts in enforcing their turnover orders:

The Court may ... appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

TEX.CIV.PRAC. & REM.CODE ANN. § 31.-002(b)(3) (Vernon 1986). Schultz also asserts that Cadle did not plead the requirements for the appointment of a receiver. To the contrary, Cadle specifically pleaded for the appointment of a receiver pursuant to the turnover statute in its Amended Application for Orders for Collection of Judgment by Court Proceedings.

This Court previously addressed the requirements of appointing a receiver in a postjudgment turnover proceeding. *Childre v. Great Southwest Life Ins. Co.,* 700 S.W.2d 284, 285 (Tex.App.—Dallas 1985, no writ). We specifically held that the "traditional requirements" for the appointment of a receiver are inapplicable in a postjudgment turnover proceeding. *Id.* at 288.

Indeed, if the Texas Legislature had intended for the appointment of receivers in turnover proceedings to meet the requirements of the receivership statutes, it would have provided for or at least referred to these requirements in the turnover statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 64.-

795, 798 (Tex.1991). As Schultz transferred his income to another corporation as an asset of that corporation, we do not consider *Caulley* controlling under these facts.

001–64.092 (Vernon 1986 & Supp.1991). Since the turnover statute does not provide specific requirements for the appointment of a receiver, this decision falls within the trial court's discretion.

■ Schultz also argues that the trial court erred in failing to set a receivership bond. This Court, quoting Judge David Hittner's article, said:

> There is a strong view that since the underlying obligation has been determined by final judgment, *the judgment debtor will not be harmed if no bond ... is required.*

*Childre,* 700 S.W.2d at 289 (quoting Hittner, *Texas Post–Judgment Turnover and Receivership Statutes,* 45 TEX.BAR J., 417, 420 (Apr.1982)) (emphasis added). The only possible rationale for requiring a receiver's bond in a postjudgment turnover proceeding is to indemnify the receiver against possible claims. *Id.* Consequently, Schultz cannot assert that he was prejudiced by the trial court's appointment of a receiver without a bond.

■ The decision as to whether a bond is necessary is within the discretion of the trial court. *Childre,* 700 S.W.2d at 289. In this case, the trial court after considering the receivership issue, did not set a bond. Schultz has demonstrated neither abuse of discretion by the trial court nor prejudice to himself as a result of the appointment of the receiver. The second point of error is overruled.

## THE TRIAL COURT'S ORDER

■ The trial court erred when it ordered Schultz to turn over to the receiver certain properties including "paychecks" received by him from the Clinic. We, therefore, modify the trial court's order by deleting therefrom the word "paychecks" and, as modified, affirm the order.