**Stewart DeVORE, Jr., Appellant,**

v.

**CENTRAL BANK & TRUST f/k/a North Fort Worth Bank, Appellee.**

No. 2-94-128-CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 19, 1995.

---

James C. Nokes, Deborah K. Hartley, Ross & Hartley, P.C., Arlington, for appellant.

Fauniel D. Rowland, Simon, Anisman, Doby & Wilson, P.C., Fort Worth, for appellee.

Frank Gilstrap, Hill, Gilstrap, Moorhead, White, Bodoin & Webster, Arlington, amicus curiae.

Before DAY and RICHARDS, JJ.

## OPINION

DAY, Justice.

Stewart DeVore, Jr. appeals the trial court's turnover order requiring him to turn over to Central Bank & Trust (the Bank) $2,000 per month. DeVore testified that his only source of income is the money he receives from his employment with Larken, Inc. The trial court found the employment contract between DeVore and Larken was a sham designed solely to evade the turnover order by rendering DeVore's income from Larken exempt as current wages. It also found DeVore to be an independent contractor whose income from Larken was subject to turnover under section 31.002 of the Texas Civil Practice & Remedies Code. We affirm.

## FACTS

On November 16, 1992, the Bank took a default judgment against DeVore and TOH, Inc. for $21,453.28. To enforce the judgment, the Bank filed an application for a turnover order against DeVore seeking a turnover of all compensation paid to him by DeVore & Carrell, P.C., DeVore's law firm. On January 28, 1994, the trial court held a hearing on the Bank's pending application for a turnover order. At this hearing, no evidence was introduced on the turnover, but the trial court stated that it was the court's position that DeVore's income, as a private attorney and an independent contractor, was subject to a turnover order. Accordingly, the trial court told the parties to negotiate the amount DeVore should turn over to the Bank, and if no compromise was reached, the trial court would schedule a hearing. The trial court, however, did not sign a turnover order pursuant to this January hearing.

On April 15, 1994, the trial court conducted another hearing. The attorney for the Bank stated that the court needed to determine the amount of the turnover because DeVore never attempted to negotiate with the Bank after the January hearing. DeVore, however, was the only witness to testify at the April hearing. According to DeVore, as of March 1, 1994, he was no longer an indepen-

dent contractor because he became an employee of one of his longtime clients, Larken, Inc., as its in-house counsel. Therefore, DeVore argued he was no longer subject to a turnover order because his salary from Larken constituted "current wages" under section 42.001(b)(1) of the Texas Property Code. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1995).

The trial court, however, rejected this argument and found the employment contract between DeVore and Larken was a sham designed solely to avoid the turnover. Furthermore, it found that DeVore was working as an independent contractor attorney for Larken, thus making his income from Larken subject to turnover under section 31.002 of the Texas Civil Practice & Remedies Code. Pursuant to the April hearing, the trial court signed an interlocutory turnover order, but delayed signing the final turnover order until a hearing could be held to determine the actual amount to be turned over.

On June 10, 1994, the trial court held another evidentiary hearing to determine the amount of money DeVore would be required to turn over. Based on the evidence in this hearing, the trial court signed the final turnover order requiring DeVore to turn over $2,000 per month to the Bank from the payments he receives for the services he renders as an attorney.[1]

## ABUSE OF DISCRETION

In points of error one, two, and four, DeVore asserts the trial court abused its discretion: (1) in ordering him to turn over a portion of his monthly income from Larken, Inc. because there is no evidence or insufficient evidence to support the trial court's finding that he was an independent contractor attorney working for Larken and that his employment contract with Larken was a sham; (2) in misapplying the law to the facts because a court may not order a debtor to turn over wages in any form for the satisfaction of a judgment; and (3) in ordering him to turn over $2,000 per month because no evidence or insufficient evidence exists to support that amount. We disagree.

---

1. At the time of the turnover order, DeVore testified that the only income he receives comes directly from Larken for his services as an alleged employee attorney of Larken.

**608**

According to the Texas Supreme Court, the proper standard of review in a turnover proceeding is an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but are rather relevant factors in assessing whether the trial court abused its discretion. *See D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex. App.—Fort Worth 1995, writ denied); *Wood v. O'Donnell*, 894 S.W.2d 555, 556 (Tex. App.—Fort Worth 1995, n.w.h.). Therefore, we will only use an abuse of discretion standard in reviewing these points of error, not a legal or factual sufficiency standard.

In determining whether a trial court abused its discretion, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary and unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland*, 862 S.W.2d 762, 776 (Tex.App.—Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

### A. DeVore's Employment Contract

In point of error one, DeVore asserts the trial court abused its discretion by finding that he was working as an independent contractor attorney for Larken because the employment contract between him and Larken was a sham designed solely for him to avoid paying his debt. The evidence introduced at the April 15, 1994 hearing showed the following:

(1) In January 1994, the trial court scheduled a hearing on the Bank's application for a turnover order;

(2) No evidence was received at that hearing;

(3) The trial court told both parties that because DeVore is a practicing attorney and an independent contractor, it is the court's position that his wages are not exempt from turnover;

(4) The trial court told both parties to negotiate the amount to be turned over, and if no agreement can be reached, it would conduct another hearing;

(5) At the time of this January 1994 hearing, DeVore practiced law for and was an 80% owner in the law firm of DeVore & Carrell, P.C. (the law firm);

(6) The trial court did not sign a turnover order pursuant to the January hearing;

(7) On April 15, 1994, the trial court conducted another hearing on the Bank's application for a turnover order;

(8) DeVore claimed his circumstances had drastically changed and that as of March 1, 1994, he was no longer an independent contractor, but instead was an employee of Larken;

(9) DeVore testified that Larken was a longtime client of his and that the work he performs for Larken as its employee is of the same quality, quantity, and nature as he did before the employment;

(10) DeVore testified that Larken exercises the same control over his work after his employment as it did before his employment and that he receives approximately the same compensation as before his employment;

(11) DeVore testified that his work for Larken prior to his employment constituted 90% of his billings;

(12) DeVore testified that he still owns 80% of the stock in the law firm;

(13) DeVore testified that he does not receive any money from the law firm and has not received any money from the law firm since his employment with Larken on March 1, 1994;

(14) DeVore testified that the only money he receives comes from Larken;

(15) DeVore testified that he maintains his same office, but Larken subleases the space from the law firm for DeVore to use;

(16) DeVore testified that the law firm pays all of his expenses and Larken reimburses it;

(17) DeVore testified that the law firm pays all of his travel expenses, and Larken reimburses it; and

(18) The attorney for the Bank stated that DeVore never made any attempt to negotiate the turnover amount after the January 1994 hearing.

After reviewing this evidence, we find that ample evidence of a substantive and probative character exists to support the trial court's findings that DeVore, effectively, worked as an independent contractor attorney for Larken and that the alleged employment agreement between DeVore and Larken was nothing more than a sham created by DeVore because the trial court had informed him in the January hearing that in its opinion, the money he received from his law firm was subject to a turnover order. Therefore, we find the trial court did not abuse its discretion because its findings were not arbitrary and unreasonable.[2] We overrule point of error one.

### B. *Exemption Of Wages*

■ In point of error two, DeVore asserts the trial court abused its discretion in ordering him to turn over a portion of his monthly payments from Larken because any payments made to him from Larken were exempt from turnover as "current wages." *See* TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1995) *and* TEX.PROP.CODE ANN. § 42.001(b)(1) (Vernon Supp.1995). In sup-

port of his point of error, DeVore argues that he is an employee of Larken. We, however, overruled that argument in point of error one. DeVore also argues that if he is not an employee of Larken, then he is an employee of his professional corporation law firm and the wages paid to him by his professional corporation law firm are "current wages" exempt from a turnover order just as wages that a doctor receives from a professional association are exempt. *See Schultz v. Fifth Judicial Dist. Court of Appeals,* 810 S.W.2d 738, 739 n. 2 (Tex.1991); *Schultz v. Cadle Co.,* 825 S.W.2d 151, 153–54 (Tex.App.—Dallas 1992), *writ denied per curiam,* 852 S.W.2d 499 (Tex.1993).

While DeVore makes a good argument, it is inapplicable because of the facts in this case. At the January 1994 hearing, the trial court stated that in its opinion the money DeVore received from his law firm was subject to a turnover order. The trial judge, however, did not sign a turnover order pursuant to this hearing. He did sign an interlocutory turnover order pursuant to the April 15, 1994 hearing. Furthermore, he signed the final turnover order pursuant to the June 10, 1994 hearing. At the time of these turnover orders, DeVore no longer received any money from his law firm. In fact, DeVore testified that his only source of income after March 1, 1994, was the payments that Larken made directly to him as an alleged employee. The turnover order thus did not apply to any wages DeVore received from his professional corporation law firm because DeVore no longer received any money from his law firm. Therefore, our determination of whether the trial court abused its discretion is limited to determining whether the payments made directly from Larken to DeVore as an independent contractor attorney constituted "current wages."[3]

---

**2.** In holding the trial court did not abuse its discretion, we do not rule on the merits of the trial court's statement that the income DeVore received from his law firm was subject to a turnover order.

**3.** We seriously question the applicability of the cases refusing to exempt attorney's fees as "current wages" in a situation where an attorney is paid a salary from a professional corporation law firm. *See, e.g., Brink v. Ayre,* 855 S.W.2d 44, 45

(Tex.App.—Houston [14th Dist.] 1993, no writ); *Ross v. 3D Tower Ltd.,* 824 S.W.2d 270 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Hennigan v. Hennigan,* 666 S.W.2d 322, 325 (Tex.App.—Houston [14th Dist.] 1984), *writ ref'd n.r.e. per curiam,* 677 S.W.2d 495 (Tex.1984). We, however, will not address this issue because DeVore testified that as of the time of the turnover order, he no longer received any compensation from his law firm.

■ The term "current wages" implies a master and servant relationship, not an attorney engaged in private practice as an independent contractor. *Brink v. Ayre,* 855 S.W.2d 44, 45 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Hennigan v. Hennigan,* 666 S.W.2d 322, 325 (Tex.App.—Houston [14th Dist.] ), *writ ref'd n.r.e per curiam,* 677 S.W.2d 495 (Tex.1984); *Brasher v. Carnation Co.,* 92 S.W.2d 573 (Tex.Civ.App.—Austin 1936, writ dism'd). Because the trial court did not abuse its discretion in finding that DeVore, effectively, works for Larken as an independent contractor attorney, it did not abuse its discretion in holding that the money Larken pays DeVore as an independent contractor attorney is not exempt from a turnover order as "current wages." We overrule point of error two.

### C. *Amount Of Turnover Order*

■ In point of error four, DeVore asserts the trial court abused its discretion by ordering him to turn over the sum of $2,000 per month because there is no evidence or insufficient evidence that DeVore is the owner of $2,000 worth of nonexempt property in excess of his reasonable and necessary living expenses. We disagree.

The trial court, after determining that Larken's payments to DeVore were subject to turnover, conducted another hearing on June 10, 1994 to determine the amount DeVore was to turn over. DeVore was the only witness to testify at this hearing. The evidence presented in the June hearing showed the following:

(1) DeVore nets $10,804.88 monthly from Larken;

(2) His claimed reasonable and necessary monthly living expenses total $10,601;

(3) The $10,601 living expenses include, among other things, a $1,424 monthly house payment; a $584 monthly tuition payment for his daughter to attend private school; a $286 monthly lease payment for his daughter's car that he entered into after the date of the judgment for the Bank; a cable television monthly payment; a cellular telephone monthly payment; book and magazine subscription monthly payments; a milk delivery service monthly payment; monthly payments to florists; and monthly payments for lawn maintenance, fertilizer, and weed killer.

DeVore argues that in order for his three-person family to meet its reasonable and necessary living expenses, he needs all of the approximately $129,000 he nets each year from Larken. The trial court, however, concluded that some of the items claimed by DeVore in his monthly expenses were not necessary and reasonable living expenses, but "pork." It then concluded that at least $1,700 could be eliminated from DeVore's estimated monthly living expenses. Therefore, the trial court ordered DeVore to pay $2,000 per month to the Bank. This left DeVore approximately $8,900 a month for the necessary and reasonable living expenses for his three-person family.

After reviewing all the evidence, we find the trial court did not abuse its discretion in ordering DeVore to turn over $2,000 per month to the Bank. The evidence presented at the June 10, 1994 hearing clearly shows that many of the items claimed by DeVore as necessary and reasonable living expenses are nothing more than luxuries that many people who pay their debts and necessary and reasonable living expenses do without. Therefore, we overrule point of error four.

### CONSTITUTIONAL CHALLENGE TO TURNOVER ORDER

In point of error three, DeVore asserts the trial court violated section 1 of the Fourteenth Amendment of the United States Constitution and Article I, section 3 of the Texas Constitution by applying the turnover statute to his monthly income as an attorney. DeVore argues that it is unconstitutional to not exempt the wages he receives from his professional corporation law firm because this creates a distinction between attorneys drawing wages from a professional corporation and other professionals drawing wages from a professional corporation. *See Schultz v. Fifth Judicial Dist. Court of Appeals,* 810 S.W.2d at 739 n. 2; and *Schultz v. Cadle,* 825 S.W.2d at 153–54.

While DeVore makes another good argument, it again is inapplicable to the facts in

this case. As stated earlier, DeVore testified that he has not received any money from his law firm since his employment with Larken on March 1, 1994. Accordingly, the turnover order signed after March 1, 1994 never applied to any of the money DeVore had previously received from his law firm. We overrule point of error three.

We affirm the trial court's judgment.

BILL J. STEPHENS, J., dissents (Sitting by Assignment).

BILL J. STEPHENS, Justice, dissenting (Sitting by Assignment).

I disagree with my colleagues on the disposition of this case; accordingly, I respectfully dissent. Generally, I agree with the facts, yet I view them somewhat differently from the majority.

On November 16, 1992, Central Bank & Trust (the Bank) took a default judgment against Stewart DeVore, Jr. and TOH, Inc. in the amount of $21,453.28. To enforce the judgment, the Bank filed an Application for Turnover Order against DeVore seeking a turnover of all compensation paid to him by the law firm in which he was a partner, DeVore & Carrell, P.C. Following an evidentiary hearing on April 15, 1994, the trial court entered an Interlocutory Turnover Order on May 20, 1994, ordering DeVore to turn over an "as yet" undetermined amount of all payments received by DeVore as an independent contractor for services rendered as an attorney.

On June 8, 1994, DeVore perfected an appeal of this order. Additionally, DeVore filed a Motion for Temporary Orders, asking this court to stay a hearing in the trial court for June 10, 1994 to determine a specific amount of money that DeVore would be required to turn over to the Bank. DeVore's Motion for Temporary Orders to stay the hearing on June 10, 1994 was denied. The June 10th hearing was held and on June 30, 1994, the trial court signed a Final Turnover Order ordering DeVore to turn over the sum of $2,000.00 per month from "payments received by [him] for services rendered as an attorney."

On July 29, 1994, this court signed an order that determined that DeVore's appeal bond filed on June 8, 1994 properly perfected DeVore's appeal as to all issues raised by the Interlocutory Turnover Order dated May 20, 1994 and the Final Turnover Order dated June 30, 1994.

On August 24, 1994, the trial court signed Findings of Fact and Conclusions of Law.

## APPELLANT'S ARGUMENT

Although DeVore presents four points of error on appeal, I believe his first point is dispositive of the case. In his first point of error, he contends that the trial court abused its discretion because there is no evidence, or insufficient evidence, that his income is other than exempt wages.

I agree with appellant's first point of error, and, accordingly, I would reverse and render the judgment of the trial court.

## FACTS OF THE CASE

This is a turnover proceeding. Following the taking of a default judgment against DeVore, an attorney, the Bank sought to collect its judgment by using the remedy of a turnover order pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986) (the "Turnover Statute"). At a hearing before the trial court on January 28, 1994, although no evidence was offered or received, the trial judge expressed his opinion that DeVore's income from the practice of law was nonexempt and subject to a turnover order. The parties themselves were not present at the January 28th hearing, although counsel for both parties were present.

On April 15, 1994, the first of two evidentiary hearings was held. DeVore was the only witness, and testified that on March 1, 1994, he had become an employee of Larken, Inc., a corporation that he had represented for many years. He testified in detail about his job description, his title, his salary, the kinds of legal services he performed for Larken, and the degree of control the president of the corporation asserted over his work. He testified that he had no source of income other than his wages from Larken.

DeVore's employment agreement with Larken, letterhead, a business card showing DeVore as vice-president and general counsel of Larken, paycheck with standard payroll deductions, and a sublease agreement whereby Larken agreed to pay DeVore's law firm for the use of its facilities by DeVore, as an office facility for DeVore to perform his duties for Larken, were all admitted into evidence without objection.

At the conclusion of the evidence, despite the lack of supporting evidence, the trial judge stated that he believed the employment agreement was a sham, signed by De-Vore and Larken to avoid the turnover order, which the judge had stated at the January 28th hearing that he intended to impose upon DeVore's earnings.

Thereafter, a second evidentiary hearing was held for the purpose of determining the amount of money DeVore would be required to turn over. Again, DeVore was the only witness. At this hearing, DeVore testified that his normal and necessary monthly living expenses consumed all of his monthly income. The court proceeded to consider each of the expense items testified to by DeVore, and again, despite any supporting evidence, expressed his opinion that some of them could be reduced or eliminated, and ordered DeVore to begin turning over $2,000.00 per month to the Bank to be applied to its judgment.

## POINT OF ERROR NUMBER ONE

POINT OF ERROR NUMBER ONE:

The trial court abused its discretion by ordering DeVore to turn over a portion of his monthly income from LARKEN, INC. because there is no evidence or insufficient evidence that such income is anything other than exempt wages for personal services.

The Texas Supreme Court has held that an abuse of discretion is the proper standard of review in a turnover proceeding. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). The exercise of power in a manner contrary to law or reason is an abuse of discretion. *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 935 (Tex.App.—Austin 1987, no writ). Abuse of discretion includes

cases in which the law has been misapplied to the facts. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975). It also includes cases where the trial court makes an unreasonable decision based on factually insufficient or no evidence, in which event the appellate court must state the reason the decision was unreasonable. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

At trial the only witness was the appellant. He testified as follows:

1. He is an employee of Larken, Inc. pursuant to a written employment agreement effective March 1, 1994.

2. He is paid twice monthly by Larken, is reimbursed for out-of-pocket business expenses incurred in the performance of his duties, has federal income tax and social security withheld from his paychecks, and receives the same salary every month regardless of the number of hours he works.

3. He reports directly to the president of Larken, who controls his work, assigns his projects, and sets his priorities.

4. He is described on the letterhead and business cards of Larken as its Vice President and General Counsel.

5. A sublease agreement between Larken and DeVore & Carrell, P.C. provides that Larken pays the professional corporation monthly for the use of its office space and facilities by DeVore as an office facility for DeVore to perform his duties for Larken.

6. DeVore & Carrell, P.C. is reimbursed by Larken for any business expenses it advances to Larken.

7. DeVore has no source of income other than his paychecks from Larken.

8. Prior to his employment by Larken, he was paid by DeVore & Carrell, P.C.

9. DeVore receives no compensation from DeVore & Carrell, P.C., has no agreement to receive any compensation in the future from DeVore & Carrell, P.C., and is not paid directly by any clients for legal services.

10. Larken, through its president, requested that DeVore sign an employ-

ment agreement so that his compensation could be allocated by Larken to its various affiliates who were receiving the benefits of his services.

11. DeVore goes to Larken's offices in Iowa approximately once every two or three months, Larken's president comes to DeVore's Texas office twice that often, they meet at other locations more often than that, and they average a one to four-day meeting every two to three weeks.

12. DeVore renders various legal services for Larken, including supervising outside counsel, negotiating with lenders on restructuring or extending loans, seeking new financing, buying and selling hotels, and handling employee matters.

13. DeVore first began representing Larken in 1970 when the company was started and continued to represent the company as its business and legal needs grew.

14. Until March 1, 1994, DeVore rendered legal services to Larken through DeVore & Carrell, P.C.

15. Most of DeVore's legal work for Larken is transactional, related to buying hotels, financing, and leasing.

16. The legal work done by DeVore for Larken as an employee of the company is the same type of work he did when he represented Larken through DeVore & Carrell, P.C.

17. Larken pays DeVore a salary of $18,-000.00 per month, for a net of $5,402.44 every two weeks, which is more than he was paid as an employee of DeVore & Carrell, P.C.

18. DeVore & Carrell, P.C., through its attorney Meg Carrell, performs legal services for other clients.

19. The sublease between DeVore & Carrell, P.C. and Larken provides that Larken will pay for a portion of the office space and facilities of DeVore & Carrell, P.C., including the office of DeVore and the nonexclusive use of the other space and facilities.

20. DeVore is still a shareholder in DeVore & Carrell, P.C. but receives no compensation from it and has no present expectation of receiving any dividend distribution.

21. DeVore is in contact with the president of Larken by telephone on an hourly basis every business day and the degree of the president's control over his work continues to increase.

The evidence presented by DeVore is uncontroverted. The evidence is further undisputed that the trial court ordered DeVore to turn over "payment received by Stewart DeVore, Jr. for services rendered as an attorney." Furthermore, it is undisputed that DeVore's only source of income is his monthly salary from Larken.

Section 31.002 of the Texas Civil Practice & Remedies Code provides:

Sec. 31.002. Collection of Judgment Through Court Proceeding

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

. . . .

(f) A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under

any statute, including Section 42.0021, Property Code....

TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986 & Supp.1995).

The language of section 31.002 is clear in its direction that a court is powerless to require the turnover of exempt property under any statute. From the uncontroverted evidence in this case, monies received from Larken, Inc. are wages to DeVore and as such they are exempt. This matter was succinctly set out in *Caulley v. Caulley*, 806 S.W.2d 795 (Tex.1991), as follows:

> The trial court ordered that Robert must turn over his wages to a receiver on the first and fifteenth days of each month until the judgment is satisfied. We hold that this order violates Sec. 31.002(f) of the Texas Civil Practice and Remedies Code. By prohibiting the turnover of the proceeds of property exempt under any statute, this section necessarily prohibits the turnover of the proceeds of current wages. Tex.Prop.Code Sec. 42.002(8) (listing current wages as one of the personal property items exempt from attachment, execution, and seizure by creditors).

*Id.* at 798.

Not only are the monies received by DeVore from Larken current wages, the evidence reveals that prior to the employment contract between DeVore and Larken, Inc., DeVore received a salary from DeVore & Carrell, P.C.; thus, those monies would also be current wages. *Schultz v. Fifth Judicial District Court of Appeals*, 810 S.W.2d 738, 740 (Tex.1991). Furthermore, once the funds from salary payments both from DeVore & Carrell, P.C., and Larken, Inc. are in the hands of DeVore, they become proceeds of current wages and as such are also exempt. *See Caulley*, 806 S.W.2d at 798.

Additionally, the courts have construed section 31.002(a) as placing the burden on the creditor to prove that the property is not exempt. In *Sloan v. Douglass*, 713 S.W.2d 436 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.), the court held:

> [U]nder the turnover statute the creditor must prove that the property of the debtor is subject to turnover by proving the property cannot be readily attached or levied on *and* that the property is not exempt.

*Id.* at 441 (emphasis in original).

Subsequently, in *Brink v. Ayre*, 855 S.W.2d 44 (Tex.App.—Houston [14th Dist.] 1993, no writ), the court held:

> A judgment creditor may show himself entitled to relief by establishing that the judgment debtor is the owner of the property, that the property could not readily be attached, and that the property is not exempt from attachment, execution, and every type of seizure.

*Id.* at 45.

The Bank only introduced into evidence an abstract of the original judgment against DeVore and a copy of its writ of execution returned *nulla bona.* These documents did show that the judgment against DeVore was obtained; however, they did not show that DeVore's salary from Larken, Inc. was exempt and subject to a turnover order. I conclude that the Bank failed to meet its burden to prove that the wages of DeVore were exempt and thus subject to a turnover order.

I would sustain appellant's first point of error. Having sustained this point of error, I would decline to address the other points. It is my conclusion that in the absence of supporting evidence, the trial court abused its discretion by requiring proceeds of DeVore's salary to be turned over to the Bank, and, accordingly, the judgment of the trial court should be reversed and rendered.